### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### EL PASO DIVISION

| | |
|---|---|
| DAVID QUIÑONEZ,<br>TDCJ # 1865830,<br>   Petitioner,<br><br>v.<br><br>WILLIAM STEPHENS,<br>Director, Texas Department of<br>Criminal Justice, Correctional<br>Institutions Division,<br>   Respondent. | §<br>§<br>§<br>§<br>§  EP-14-CV-73-FM<br>§<br>§<br>§<br>§<br>§<br>§ |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Petitioner David Quiñonez's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1).[1]  In his petition, Quiñonez, a state prisoner at the Bill Clements Unit in Amarillo, Texas, with a projected release date of February 18, 2051, challenges Respondent William Stephens's custody over him based on a conviction in the 171st Judicial District Court of El Paso County, Texas, for murder.[2]  Quiñonez asserts his counsel provided constitutionally ineffective assistance "by not bringing forward" exculpatory witnesses or addressing his mental "incompetence."[3]  Stephens contends Quiñonez's "claim must fail and be denied as without merit."[4]  Quiñonez replies, "[i]n a nutshell . . . his plea of guilty . . .

---

[1] "ECF No." in this context refers to the Electronic Case Filing number for documents docketed in this case.  Where a discrepancy exists between page numbers on filed documents and page numbers assigned by the ECF system, the Court will use the latter page numbers.

[2] *State v. Quiñonez*, Cause No. 20110D02123 (171st Dist. Ct. El Paso Cnty., Tex. June 11, 2013).

[3] Pet'r's Pet. 7, ECF No. 1, Feb. 3, 2014.

[4] Resp't's Answer 19, ECF No. 24, July 28, 2014.

was not voluntarily, knowingly and intelligently [entered] due to the ineffective assistance of counsel."[5] After carefully reviewing the record and for the reasons discussed below, the Court finds Quiñonez is not entitled to § 2254 relief. The Court will accordingly deny Quiñonez's petition and decline to certify his issues for appeal.

## BACKGROUND AND PROCEDURAL HISTORY

According to local newspaper accounts, on February 18, 2011, Quiñonez shot Jimmy Romero four times with a firearm as they sat with Rosie Rodriguez in a red Dodge Neon stopped at the entrance to the short-term parking lot on the east side of the El Paso International Airport in El Paso, Texas. After the shooting, witnesses saw Quiñonez throw a gun into nearby bushes, run into the airport's long-term parking lot, and flee in a shuttle bus to the airport terminal. Police officers eventually arrested him on the west side of the airport. Romero's autopsy report revealed two lethal shots, including one which traveled through his heart, caused him to bleed to death. A state grand jury returned an indictment charging Quiñonez with murder. The indictment contained a sentencing enhancement based on Quiñonez's prior felony conviction in Chaves County, New Mexico, for aggravated fleeing of a law enforcement officer.[6] Quiñonez pleaded not guilty and proceeded to trial. After hearing the evidence and three hours of jury deliberations on a verdict, Quiñonez told his attorneys that he would accept the State's plea agreement offering him a 40-year prison sentence in exchange for his guilty plea. Meanwhile, the jury apparently determined that Quiñonez was guilty as charged. On June 11, 2013, the court accepted Quiñonez's plea and sentenced him to the recommended forty-years in prison. Quiñonez did not appeal.

---

[5] Pet'r's Reply 3, ECF No. 31, Aug. 27, 2014.

[6] State Writ. R. 22, Ex parte Quiñonez, WR-80,688-01.

Quiñonez did file a state application for writ of habeas corpus collaterally attacking the conviction. In his state writ, Quiñonez asserted his counsel provided ineffective assistance when they failed to (1) investigate the case and interview witnesses; (2) advise the court that he was taking medications, withdrawing from methamphetamine, and suffering from a learning disability; and (3) call as witnesses during his trial Rosie Rodriguez, who would have told the jury that the victim had threatened him, and Eddie Cummings, who would have testified that Romero's brother had told him that Romero had plotted to kill Quiñonez.[7] On January 8, 2014, the Texas Court of Criminal Appeals denied the writ application without written order.[8] This proceeding followed on January 28, 2014.

Mindful of Quiñonez's *pro se* status,[9] the Court understands him to now assert that his counsel provided constitutionally ineffective assistance when they failed to (1) interview "Rosie Rodriguez who would have testified as to. . . Romero threaten[ing] his life by telling [him], 'I'll put you in the cemetery' ";[10] (2) obtain a psychiatric evaluation of Quiñonez, although he told them he was "delusional . . . had difficulty reasoning . . . legally insane . . . paranoid . . . [and] schizophrenic";[11] and (3) call an unnamed witness who would have testified that the victim had threatened Quiñonez, call Eddie Cummings who would have testified that the victim's brother

---

[7] State Writ R. 32–34, *Ex parte Quiñonez*, WR-80,688-01.

[8] *Id.* at cover.

[9] *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding *pro se* pleadings to less stringent standards than formal pleadings drafted by lawyers); *see also Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985) (explaining liberal construction allows active interpretation of a *pro se* pleading to encompass any allegation which may raise a claim for federal relief).

[10] Br. in Supp. 1, ECF No. 1-1, Feb. 3, 2014.

[11] *Id.* at 3–4.

had told him that the victim had plotted to kill Quiñonez, or call another unnamed witnesses who would have testified as to Quiñonez's character.[12]  Quiñonez claims, "[a]s a result of these deficiencies the defendant's plea of guilty was not a knowing, intelligent act done with sufficient awareness of the relevant circumstances and likely consequences."[13]

### APPLICABLE LAW

**A.    28 U.S.C. § 2254**

"[C]ollateral review is different from direct review,"[14] and the writ of habeas corpus is "an extraordinary remedy"[15] reserved for those petitioners whom "society has grievously wronged."[16]  It "is designed to guard against extreme malfunctions in the state criminal justice system."[17]  It provides an important, but limited, examination of an inmate's conviction and sentence.[18]  Accordingly, the federal habeas courts' role in reviewing state prisoner petitions is exceedingly narrow.  "Indeed, federal courts do not sit as courts of appeal and error for state court convictions."[19]  They must generally defer to state court decisions on the merits[20] and on

---

[12] *Id.* at 6–8.

[13] *Id.* at 2.

[14] *Brecht v. Abrahamson*, 507 U.S. 619, 633 (1993).

[15] *Id.*

[16] *Id.* at 634.

[17] *Id.* (citing Justice Stevens's concurrence in *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)).

[18] *See Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 787 (2011) ("[S]tate courts are the principal forum for asserting constitutional challenges to state convictions.").

[19] *Dillard v. Blackburn*, 780 F.2d 509, 513 (5th Cir. 1986).

[20] *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002).

procedural grounds.[21]  They may not grant relief to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also present.[22]

A federal court can only grant relief if "the state court's adjudication of the merits was 'contrary to, or involved an unreasonable application of, clearly established Federal law,'"[23] or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[24]  The focus of this well-developed standard "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."[25]

Moreover, the federal court's focus is on the state court's ultimate legal conclusion, not whether the state court considered and discussed every angle of the evidence.[26]  Indeed, state courts are presumed to know and follow the law."[27]  Factual findings, including credibility choices, are entitled to the statutory presumption, so long as they are not unreasonable "in light of

---

[21] *Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991); *Muniz v. Johnson*, 132 F.3d 214, 220 (5th Cir. 1998).

[22] *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996).

[23] *Berghuis v. Thompkins*, 560 U.S. 370, 378 (2010) (quoting 28 U.S.C. § 2254(d)(1)).

[24] 28 U.S.C. § 2254(d)(2) (2012).

[25] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

[26] *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc); *see also Catalan v. Cockrell*, 315 F.3d 491, 493 (5th Cir. 2002) ("we review only the state court's decision, not its reasoning or written opinion").

[27] *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

the evidence presented in the State court proceeding."[28]  Further, factual determinations made by a state court enjoy a presumption of correctness which the petitioner can rebut only by clear and convincing evidence.[29]  The presumption of correctness applies not only to express findings of fact, but also to "unarticulated findings which are necessary to the state court's conclusions of mixed law and fact."[30]

In sum, the federal writ serves as a "guard against *extreme malfunctions* in the state criminal justice systems," not as a vehicle for error correction.[31]  "If this standard is difficult to meet, that is because it was meant to be."[32]

### B.   Ineffective Assistance of Counsel

To prove an ineffective-assistance-of-counsel claim, a petitioner must satisfy both prongs of the test announced in *Strickland v. Washington*[33] by showing not only constitutionally deficient performance by counsel, but also actual prejudice to his legal position.[34]  The Court

---

[28] 28 U.S.C. § 2254(d)(2).

[29] 28 U.S.C. § 2254(e)(1); *see Clark v. Quarterman*, 457 F.3d 441, 444 (5th Cir. 2006) (noting that a state court's determination under § 2254(d)(2) is a question of fact).

[30] *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001).

[31] *Harrington v. Richter*, 562 U.S. 86, 131 S.C. 770, 786 (2011) (citation omitted) (emphasis added).

[32] *Id.*

[33] *Strickland v. Washington*, 466 U.S. 668, 689–94 (1984).

[34] *Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994) (summarizing the *Strickland* standard of review).

need not address both components if the petitioner makes an insufficient showing on one.[35]  To demonstrate deficiency, a petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."[36]  A court considering such a claim "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance."[37]  To demonstrate prejudice, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[38]  A mere allegation of prejudice is not sufficient to satisfy the prejudice prong of *Strickland*.[39]  The probability "of a different result must be substantial, not just conceivable."[40]  Thus, counsel's performance is entitled to "a heavy measure of deference" by a reviewing court.[41]

Moreover, the Court must review a petitioner's ineffective-assistance-of-counsel claim "through the deferential lens of [28 U.S.C.] § 2254(d),"[42] and consider not only whether the state court's determination was incorrect, but also "whether that determination was unreasonable—a

---

[35] *Strickland*, 466 U.S. at 697.

[36] *Id.* at 687.

[37] *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 787 (2011) (citation omitted).

[38] *Porter v. McCollum*, 558 U.S. 30, 38–39 (2009) (internal quotation marks and citation omitted).

[39] *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994).

[40] *Richter*, 131 S.Ct. at 792.

[41] *Cullen v. Pinholster*, 131 S.Ct. 1388, 1408 (2011) (internal quotation marks and citation omitted).

[42] *Id.* at 1403.

substantially higher threshold."[43]  Thus, in light of the deference accorded by § 2254(d), "[t]he

pivotal question is whether the state court's application of the *Strickland* standard was

unreasonable":[44]

> The standards created by *Strickland* and § 2254(d) are both highly deferential,
> and when the two apply in tandem, review is doubly so.  The *Strickland*
> standard is a general one, so the range of reasonable applications is
> substantial.  Federal habeas courts must guard against the danger of equating
> unreasonableness under *Strickland* with unreasonableness under § 2254(d).
> When § 2254(d) applies, the question is not whether counsel's actions were
> reasonable.  The question is whether there is any reasonable argument that
> counsel satisfied *Strickland's* deferential standard.[45]

## ANALYSIS

### A.    Failure to Interview Witnesses (Claims One and Three)

Quiñonez asserts his counsel provided constitutionally ineffective assistance when they

failed to interview "Rosie Rodriguez who would have testified as to. . . Romero threaten[ing] his

life by telling [him], 'I'll put you in the cemetery.' "[46]  He further asserts they erred when they

failed to call an unnamed witness who would have testified that Romero had threatened

Quiñonez, call Eddie Cummings who would have testified that Romero's brother told him that

Romero had plotted to kill Quiñonez, or call another unnamed witnesses who would have

---

[43] *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citing *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

[44] *Richter*, 131 S. Ct. at 785.

[45] *Id.* at 788.

[46] Br. in Supp. 1, ECF No. 1-1, Feb. 3, 2014.

testified as to Quiñonez's character.[47]

An adequate investigation is a requisite of effective assistance.[48]  To establish a constitutional violation, however, a defendant must show both a failure to investigate adequately and prejudice arising from that failure.[49]  Thus, for a petitioner to prevail, he must allege, with specificity, what the investigation would have revealed and how it would have altered the outcome of the trial.[50]  Furthermore, "[c]laims that counsel failed to call witnesses are not favored on federal habeas review."[51]  "[T]he presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain."[52]  Accordingly, a petitioner seeking to show ineffective assistance of counsel by failing to investigate a witness must "name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense."[53] Additionally, in the context of a guilty plea, the defendant must not only show that counsel provided ineffective assistance, but also show that, absent counsel's errors, the defendant would

---

[47] *Id.* at 6–8.

[48] *Gray v. Lucas*, 677 F.2d 1086, 1093 (5th Cir.1982).

[49] *Id.*

[50] *United States v. Green*, 882 F.2d 999, 1003 (5th Cir.1989).

[51] *Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir. 2010).

[52] *Id.*

[53] *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir.2009).

not have pleaded guilty and would have insisted on going to trial.[54]  Mere allegations from a petitioner that he would have demanded a trial if counsel's advice had been different are insufficient to establish a reasonable probability that he would have actually done so.[55]  If the petitioner claims that counsel erred by failing to investigate or discover certain exculpatory evidence, the prejudice determination will depend upon whether the discovery of such evidence would have influenced counsel to change his advice regarding the guilty plea.[56]

It is clear that the evidence against Quiñonez was overwhelming and that he faced a potential sentence of life in prison.[57]  It is not clear, however, that Rosie Rodriguez, Eddie Cummings, and the unnamed witnesses were both available for trial and would have testified in a manner favorable to Quiñonez's defense.  In these difficult circumstances, Quiñonez's counsel successfully negotiated a plea agreement with the State which included a recommendation that the Court impose a forty-year sentence.[58]  Moreover, they convinced the State to accept the agreement while the jury deliberated Quiñonez's guilt.  Thus, Quiñonez received substantial benefit from his plea bargain.  Quiñonez has not shown, through his conclusory assertions, that the results of an investigation—and the experience of the trial—would have caused his counsel to change their advice with regard to the guilty plea.  Moreover, he has not shown that, had his counsel conducted a more thorough investigation and had called the witnesses to testify, he

[54] *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Joseph v. Butler*, 838 F.2d 786, 791 (5th Cir. 1988).

[55] *Joseph*, 838 F.2d at 791.

[56] *Mangum v. Hargett*, 67 F.3d 80, 83 (5th Cir.1995).

[57] State Writ R. 24, *Ex parte Quiñonez*, WR-80,688-01.

[58] *Id.* at 29.

would not have pleaded guilty, but would have insisted on continuing with the trial. Quiñonez has, therefore, not overcome the strong presumption that his counsels' representation was within the wide range of reasonable professional assistance or shown that there is a reasonable probability that, but for his counsel's purported errors, the result of the proceeding would have been different.

Furthermore, the Texas Court of Criminal Appeals implicitly applied the law discussed above to Quiñonez's claims when it denied his state writ application.[59] Again, it "is not the province of a federal habeas court to reexamine state-court determinations on state-law questions," but rather, "to decid[e] whether a conviction violated the Constitution, laws, or treaties of the United States."[60] Quiñonez has not met his burden of showing, by clear and convincing evidence, that "the state court's adjudication of the merits was 'contrary to, or involved an unreasonable application of, clearly established Federal law,'"[61] or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[62]

Quiñonez is not entitled to § 2254 relief on these claims.

**B.      Failure to Obtain a Psychiatric Evaluation (Claim Two)**

Quiñonez also avers his counsel provided constitutionally ineffective assistance when they failed to obtain a psychiatric evaluation, although he claims he told them he was "delusional

---

[59] *Id.* at cover.

[60] *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991).

[61] *Berghuis v. Thompkins*, 560 U.S. 370, 378 (2010) (quoting 28 U.S.C. § 2254(d)(1)).

[62] 28 U.S.C. § 2254(d)(2).

. . . had difficulty reasoning . . . legally insane . . . paranoid . . . [and] schizophrenic" before he entered his guilty plea.[63]  Quiñonez does not, however, present evidence to substantiate his claim of mental illness at the time he entered his plea.

A valid "guilty plea must be knowingly, intelligently and voluntarily entered.  The defendant must be shown to understand the nature of the charges and the consequences of the plea."[64]  Understanding the consequences of a plea requires only that the petitioner know the maximum prison term and fine for the charged offense.[65]

Quiñonez signed detailed, written plea papers which contained information regarding the range of potential punishment attached to the charged offense as well as the consequences of the plea before entering his plea.[66]  By signing these papers—which included waivers, acknowledgments, and a judicial confession—Quiñonez acknowledged that he understood the admonishments, that he was aware of the consequences of his plea, *that he was mentally competent to enter his plea*, and that he was knowingly, freely, and voluntarily entering his plea.[67]  Moreover, both trial counsel and the trial court signed the plea papers as well, demonstrating that they reviewed these admonishments and waivers with Quiñonez.[68]  More

---

[63] Br. in Supp. 3–4, ECF No. 1-1, Feb. 3, 2014.

[64] *Grabowski v. Jackson Cnty. Public Defenders Office*, 47 F.3d 1386, 1389 (5th Cir. 1995).

[65] *James v. Cain*, 56 F.3d 662, 666–67 (5th Cir. 1995) (citing *Spinelli v. Collins*, 992 F.2d 559, 561 (5th Cir. 1993)).

[66] State Writ R. 23–30, *Ex parte Quiñonez*, WR-80,688-01.

[67] *Id.* at 26 (emphasis added).

[68] *Id.* at 28.

specifically, they certified to the trial court that Quiñonez was "competent to stand trial and able to communicate with" them and assist "in the preparation of a defense."[69]  Finally, the trial court entered its own findings, approval, and order in which it further confirmed that Quiñonez was "aware of the nature of the charges" against him, "mentally competent to enter a plea of guilty," and capable of "freely and voluntarily" entering his plea.[70]

Official state court records are entitled to a presumption of regularity as well as a presumption of correctness on federal habeas review.[71]  Moreover, formal declarations in open court carry a strong presumption of truth.[72]  Here, the trial court's record makes it clear that Quiñonez's was mentally competent at the time he voluntarily, knowingly, and intelligently entered his guilty plea.

"Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition (in state and federal court), unsupported and unsubstantiated by anything else contained in the record, to be of probative evidentiary value."[73] "The subsequent presentation of conclusory allegations which are unsupported by specifics is subject to summary dismissal."[74]

---

[69] *Id.*

[70] *Id.* at 30.

[71] *Carter v. Collins*, 918 F.2d 1198, 1202 n.4 (5th Cir. 1990); *Hobbs v. Blackburn*, 752 F.2d 1079, 1081-82 (5th Cir. 1985).

[72] *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

[73] *Ross v. Estelle*, 694 F.2d 1008, 1011–12 and n.2 (5th Cir. 1983); *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir.1990).

[74] *Blackledge*, 431 U.S. at 74.

Quiñonez's bald assertions, unsupported by any evidence, lack probative evidentiary value and thus cannot support a claim for habeas corpus relief. Quiñonez has not, therefore, overcome the strong presumption that his counsels' representation was within the wide range of reasonable professional assistance or shown that there is a reasonable probability that, but for his counsel's purported errors, the result of the proceeding would have been different.

Moreover, in denying relief on state habeas review, the state court necessarily found that Quiñonez's guilty plea was knowingly and voluntarily entered. Both the implicit and explicit factual findings and credibility determinations of the Texas courts are entitled to a presumption of correctness.[75] Since Quiñonez has failed to rebut this presumption with clear and convincing evidence, the Court must presume these findings are correct and reject his contentions to the contrary.[76] Accordingly, the Court finds that Quiñonez has failed to demonstrate that the Texas courts decisions resulted from an unreasonable application of clearly established federal law or an unreasonable application of the facts in light of the evidence presented.

Quiñonez is not entitled to § 2254 relief on this claim.

## EVIDENTIARY HEARING

A court will hold an evidentiary hearing on a § 2254 petition only when the petitioner shows either (1) the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or (2) a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing

---

[75] 28 U.S.C. § 2254(e).

[76] *Id.*; *Marshall v. Lonberger*, 459 U.S. 422, 433 (1983) (applying presumption of correctness to implicit finding against the defendant's credibility, where that finding was necessarily part of the court's rejection of the defendant's claim).

evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. Quiñonez does not assert that either prerequisite for a hearing exists in his case. The record is adequate to dispose fully and fairly of Quiñonez's claims. The Court need inquire no further on collateral review and an evidentiary hearing is not necessary.

## CERTIFICATE OF APPEALABILITY

A petitioner may not appeal a final order in a habeas corpus proceeding "[u]nless a circuit justice or judge issues a certificate of appealability."[77] Further, appellate review of a habeas petition is limited to the issues on which a certificate of appealability is granted.[78] In other words, a certificate of appealability is granted or denied on an issue-by-issue basis, thereby limiting appellate review solely to those issues on which a certificate of appealability is granted.[79] Although Quiñonez has not yet filed a notice of appeal, this Court nonetheless must address whether he is entitled to a certificate of appealability.[80]

---

[77] 28 U.S.C. § 2253(c)(1)(B) (2012).

[78] *See Lackey v. Johnson*, 116 F.3d 149, 151 (5th Cir. 1997) (holding that, in regard to the denial of relief in habeas corpus actions, the scope of appellate review is limited to the issues on which a certificate of appealability is granted).

[79] *See* 28 U.S.C. § 2253(c)(3) (setting forth the narrow scope of appellate review in habeas corpus matters); *see also Lackey*, 116 F.3d at 151 (holding that a certificate of appealability is granted on an issue-by-issue basis, thereby limiting appellate review to those issues); *but see United States v. Kimler*, 150 F.3d 429, 431 n.1 (5th Cir. 1998) ("We have decided, however, that the monolithic nature of [Federal Rule of Appellate Procedure] Rule 22(b) in conjunction with Congress's mandate for issue specificity on collateral review embodied in 28 U.S.C. § 2253(c)(3) requires a more express request. In order to obtain appellate review of the issues the district court refused to certify, the petitioner must first make the threshold substantial showing of the denial of a constitutional right. *See* 28 U.S.C. 2253(c)(2). Only after clearing this hurdle may the petitioner proceed to brief and we review the merits of the rejected issues.").

[80] *See* 28 U.S.C. foll. § 2255 Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.").

A certificate of appealability "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."[81]  In cases where a district court rejects a petitioner's constitutional claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[82]  To warrant a grant of the certificate as to claims that the district court rejects solely on procedural grounds, the petitioner must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."[83]  Here, Quiñonez is not entitled to a certificate of appealability because reasonable jurists would not find debatable the Court's conclusions that he has not made a substantial showing of the denial of a constitutional right.  Accordingly, the Court finds that it should deny Quiñonez a certificate of appealability.

**CONCLUSION AND ORDERS**

The Court concludes that Quiñonez is not entitled to § 2254 relief.  The Court further concludes that Quiñonez is not entitled to a certificate of appealability.  Accordingly, the Court enters the following orders:

**IT IS ORDERED** that Quiñonez's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1) is **DENIED**, and his cause is **DISMISSED WITH PREJUDICE**.

---

[81] 28 U.S.C. § 2253(c)(2).

[82] *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (applying *Slack* to a certificate of appealability determination in the context of § 2255 proceedings).

[83] *Slack*, 529 U.S. at 484.

**IT IS FURTHER ORDERED** that Quiñonez is **DENIED** a certificate of appealability.

**IT IS ALSO ORDERED** that all pending motions are **DENIED AS MOOT**.

**IT IS FINALLY ORDERED** that the Clerk shall **CLOSE** this case.

**SO ORDERED**.

**SIGNED** this _____26_____ day of June 2015.

FRANK MONTALVO
UNITED STATES DISTRICT JUDGE